(Reap. Dec. 8485)

UNITED STATES v. VALLEY EVAPORATING COMPANY

Entry No. 27–R, etc.

(Decided October 14, 1955)

*Warren E. Burger,* Assistant Attorney General (*Alfred A. Taylor, Jr.,* and *Daniel I. Auster,* trial attorneys), for the plaintiff.
· *Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the defendant.

OLIVER, Chief Judge: These appeals for reappraisement relate to certain boxes of apples that were exported from Canada and entered at Oroville, Wash., which is a subport in customs district No. 30, of which Seattle, Wash., is the headquarters port. Counsel for the respective parties have submitted these appeals on an agreed set of facts that are decisive of the issues before me, but, before attention can be directed thereto, consideration must be given to defendant's motion for dismissal presented at the time of trial in Seattle, Wash., as follows:

MR. TUTTLE: The defendant moves to dismiss the enumerated cases on the ground that they were improperly signed and should have been signed by the Deputy Collector at Orrovile [*sic*]; I just want to clear that up, we do not challenge Mr. Ogdon's acts if they can be signed by a Seattle official, but we say they should have been signed by the man in charge of the matter at Orroville [*sic*].

To support the motion for dismissal, counsel for defendant called as a witness Jesse G. Ogdon, who, as "Deputy Collector," signed all of the collector's appeals involved herein.

Defendant's witness testified that he has been the "deputy collector in charge of the Liquidating Division in the office of the Collector of Customs in Seattle, Washington," since 1940, including the period in 1948, when these appeals were filed. He stated that he signed the appeals in question as "the legal representative for the Collector of Customs for District No. 30, the Washington District," that, in doing so, he was performing part of his official duties that include an assignment to sign for the collector of customs all collector's appeals for reappraisement filed in customs district No. 30 in Washington; that such an assignment was given orally many years ago; and that "it

has been the practice in this District for the last thirty years for the Deputy Collector in charge of the Liquidating Division to sign Collector's appeals for all the Ports in District #30." The record discloses further that the witness has been the only deputy collector assigned by the collector to take appeals for reappraisement in the said customs district and that there has never been any other assignment "for any Deputy Collector at any other Port to sign appeals for reappraisement for the Collector."

Defendant's brief sets forth several statutory provisions, including those that define the word "collector" to include "deputy collector of customs," (19 U. S. C. § 1401 (h)), and which empower deputy collectors "to perform any and all functions prescribed by law for collectors of customs" (19 U. S. C. § 36). Counsel for defendant argues to the effect that the cited provisions should be construed "in reference to the established geographical setup of the customs service" and suggests an organizational plan as follows:

* * * For instance, the collector and assistant collector function only within the limits of the customs district to which they belong, and by analogy a deputy collector cannot reach out from his own domain at the particular port at which he is stationed and act as "collector" at some other port.

However effective might be any of the ideas concerning port administration suggested by defendant, they are wholly immaterial herein.

Defendant's uncontradicted testimony, elicited from the customs official, hereinabove referred to, establishes that the action of the deputy collector in connection with the appeals under consideration was in accordance with a practice that has been followed over a long period of years, which practice was instituted under authority bestowed by the collector and that is supported by statute (19 U. S. C. §§ 36, 37). The "official action by a customs officer is presumed to be regularly and lawfully had; and the force of this presumption is not to be passed over lightly, but to be regarded as always present and necessary to be considered when the acts of customs officials are assailed. * * * one who would set aside the acts of such officials must assume the burden of proving that in fact or law error has been committed." *United States* v. *Frank & Lambert,* 2 Ct. Cust. Appls. 239, T. D. 31973. On the basis of the record before me, defendant's motion to dismiss is denied.

Consideration has been given to all of the cases cited in the briefs of counsel for the respective parties, but it is deemed unnecessary to discuss any of those citations, in the light of my disposition of defendant's motion, as hereinabove set forth.

The stipulated facts, so far as they are pertinent to a disposition of the present issue, are as follows:

(1) The market value or price at the time of exportation of the American apples in boxes of United States origin involved in the above cases, at which such or similar merchandise was freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, was US $0.64 per bushel of 50 pounds, which included the total cost of alterations of the type referred to in *Hallauer* v. *US*, 40 CCPA (Customs) 197, CAD 518, of US $0.113 per bushel of 50 pounds, and the value of boxes of United States origin of $0.265 per bushel of 50 pounds.

(2) The American apples in boxes of United States origin involved in these cases are of the same character as the American apples in boxes of Canadian origin in *Hallauer* v. *US*, 40 CCPA (Customs) 197, CAD 518, and the record therein may be incorporated herein.

(3) There was no higher export value for such or similar American apples in boxes of United States origin at the time of exportation thereof.

On the agreed facts and following the cited authority on the law, I find foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, to be the proper basis for determining the value of the American apples and boxes of United States origin involved herein, and that such statutory value is $0.64 per bushel of 50 pounds, which includes the total cost of alterations made in Canada in the amount of $0.113 per bushel of 50 pounds, and the value of boxes of United States origin in the amount of $0.265 per bushel of 50 pounds.

Judgment will be rendered accordingly.